UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE GRAY PANTHERS OF SAN FRANCISCO, et al.,<br><br>　　　Plaintiffs,<br><br>　　v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>　　　Defendants.<br>_____/ | No. C 09-2307 PJH<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION; ORDER GRANTING MOTION TO DISMISS** |

　　Plaintiffs' motion for a preliminary injunction and the motion of defendants Arnold Schwarzenegger and David Maxwell-Jolly to dismiss the complaint came on for hearing before this court on August 19, 2009. Plaintiffs appeared by their counsel Lynn S. Carman, Jessie M. Sandoval, and Stanley L. Friedman; and defendants appeared by their counsel Deputy Attorneys General Karin S. Schwarz and Joshua N. Sondheimer. Defendant John Chiang also appeared, by his counsel Daniel J. Powell.

　　Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion for preliminary injunction and GRANTS the motion to dismiss.

**BACKGROUND**

　　This is a case challenging the implementation of certain provisions of California Assembly Bill (AB) X3 5, Stats. 2009-2010., 3rd Exec. Sess., c.20 (AB 5). The challenged provisions, codified at California Welfare and Institutions Code § 14131.10(b)(1), eliminate payment under Medicaid, as of July 1, 2009, for certain "optional" Medicaid services.

　　Plaintiffs bring this action under the Supremacy Clause, Art. 6, cl. 2 of the United

States Constitution, seeking injunctive and declaratory relief. Plaintiffs allege that the implementation of § 14131.10(b)(1) conflicts with the federal American Recovery and Reinvestment Act or 2009 ("ARRA"), and that § 14131.10(b)(1) is therefore preempted. Plaintiffs now move for a preliminary injunction, and defendants move to dismiss the complaint.

A.    The Medicaid Act

Medicaid is a cooperative federal-state program that provides federal financial assistance to participating states to reimburse certain costs of medical treatment for the poor, elderly, and disabled. 42 U.S.C. § 1396. To qualify for federal matching funds, known as the Federal Medical Assistance Percentage (FMAP),[1] a state must establish and administer its Medicaid program through a state plan approved by the Secretary of Health and Human Services (HHS). Id. § 1396a.

A state that participates in Medicaid must determine which services it will provide. See id. § 1396d(a). To receive federal approval, a state plan is required to include seven enumerated medical services. Id. §§ 1396a(a)(10), 1396d(a)(1)-(5), (17), (21) (including as mandatory: inpatient hospital, outpatient hospital, laboratory and x-ray, nursing facility, physician, nurse-midwife, and nurse-practitioner services). A state may also elect to provide optional services, such as dental services, prosthetics, and prescription drugs. See id. §§ 1396a(a)(10)(A), 1396d(a).

The state must designate a "single state agency" to be responsible for administration and supervision of the state plan. Id. § 1396a(a)(5). Once designated as the single state agency for Medicaid, this agency may not delegate the administration of the program or any activities related to rule-making and policy development to any entity other than its own officials. 42 C.F.R. § 431.10(e). California participates in Medicaid through the Medi-Cal

---

[1] FMAP is defined in the Medicaid Act as, "for any State[,] . . . 100 per centum less the State percentage. . . . " The "State percentage" is "the percentage which bears the same ratio to 45 per centum as the square of the per capita income of such State bears to the square of the per capita income of the continental United States (including Alaska) and Hawaii" with some modifications. Id. § 1396d(b).

program, and has designated the Department of Health Care Services (DHCS) as the single state agency responsible for administration of the Medi-Cal program. Cal. Welf. & Inst. Code § 10740, 14000, et seq.

The receipt of federal funding is expressly conditioned on compliance with the Medicaid Act, and HHS is authorized to withhold funds for noncompliance. 42 U.S.C. § 1396c; see also 42 C.F.R. § 430.35. The Centers for Medicare & Medicaid Services (CMS) is the federal agency that administers the Medicaid program on behalf of the Secretary of HHS. See Pharmaceutical Research & Mfrs. of America v. Walsh, 538 U.S. 644, 650 n.3 (2003).

B.   Enactment of ABX3 5

At issue in the present action is the California Legislature's decision in February 2009, as part of its response to the State's fiscal emergency, to eliminate some (but not all) of the optional benefits previously offered under Medi-Cal.

On December 19, 2008, the Governor of California declared a fiscal emergency and directed the California legislature into a special session. The Governor noted that there was an approximately $15 billion General Fund deficit for the 2008-2009 fiscal year that, if unaddressed, would grow to $42 billion with the next 18 months. Therefore, the Governor stated that "immediate and comprehensive action to reduce current spending must be taken to ensure, to the maximum extent possible, that the essential services of the State are not jeopardized and the public health and safety is preserved."

The Legislature enacted a series of budget measures in response, including, in February 2009, ABX3 5 as urgency legislation to take effect immediately. ABX3 5, which became effective on March 3, 2009, made a number of reductions to various state programs. In the present action, plaintiffs challenge the provision codified as Welfare and Institutions Code § 14131.10(b)(1), which "exclude[s] from coverage under the Medi-Cal program," effective July 1, 2009, the following optional benefits: adult dental services, acupuncture services, audiology services and speech therapy services, chiropractic services, optometric and optician services, podiatric services, psychological services, and

incontinence creams and washes ("the nine Medicaid services").

Dental services remain covered if they constitute "[m]edical and surgical services provided by a doctor of dental medicine or dental surgery, which, if provided by a physician, would be considered physician services, and which services may be provided by either a physician or a dentist in this state." Cal. Welf. & Inst. Code § 14131.10(b)(2).

In addition, the nine optional Medicaid services are covered if they are pregnancy-related; or if they are provided to beneficiaries under the Early and Periodic Screening Diagnosis and Treatment Program, or provided to beneficiaries receiving long term care in certain nursing facilities licensed by the State. Id. § 14131.10(b)(3) & (c). The State anticipates that the implementation of § 14131.10(b)(1) will result in $129.4 million in savings to General Fund expenditures in the 2009-2010 fiscal year.

C.    The American Recovery and Reinvestment Act

Congress enacted ARRA on February 17, 2009. H.R. 1, 111th Cong., Pub. L. No. 111-5 (1st Sess. 2009). At issue here is a provision of Title V of ARRA. Title V provides "state fiscal relief," during a limited period of economic downturn (October 1, 2008 through December 31, 2010). This "state fiscal relief" comes in seven forms – a temporary increase in Medicaid FMAP payments, ARRA § 5001; a temporary increase in DSH (disproportionate share hospitals) allotments during the recession, id. § 5002; an extension of moratoria on certain Medicaid final regulations, id. § 5003; an extension of transitional medical assistance, id. § 5004; an extension of the qualifying individual program, id. § 5005; protections for Indians under Medicaid and CHIP, id. § 5006; and funding for oversight and implementation, id. § 5007.

Congress expressly stated that the purposes of Title V are (1) "[t]o provide fiscal relief to the States in a period of economic downturn[;]" and (2) "[t]o protect and maintain State Medicaid programs during a period of economic downturn, including by helping to avert cuts to provider payment rates and benefits or services, and to prevent constrictions of income eligibility requirements for such programs, but not to promote increases in such requirements." Id. § 5000(a).

Under ARRA, qualifying states receive a general 6.2 percent increase in their FMAP, and states with relatively high growth in unemployment rates receive additional increases based on quarterly unemployment statistics. Id. § 5001(b), (c).

In order to receive enhanced FMAP, a state may not restrict eligibility "standards, methodologies, or procedures" beyond those in effect on July 1, 2008. Id. § 5001(f)(1). In addition, a state is also ineligible for enhanced FMAP "if any amounts attributable (directly or indirectly) to such increase are deposited or credited into any reserve or rainy day fund of the State." Id., § 5001(f)(3).

D. CMS Guidance to States Regarding Implementation of ARRA

Since February 2009, CMS has issued several letters and fact sheets to assist the states in complying with ARRA's requirements. CMS has made clear that ARRA prohibits states from restricting eligibility for Medicaid, as distinct from the medical services provided under the Act. Thus, in a recent communication, CMS explained that a state could eliminate Medicaid services without jeopardizing enhanced FMAP:

> Question 19: Can States modify or eliminate services, as opposed to eligibility criteria, and still qualify for the increased FMAP?
>
> Answer: If the change in the service has no potential impact on an individual's ability to maintain Medicaid eligibility, such a change would not disqualify a State from the increased FMAP.

CMS, "American Recovery and Reinvestment Act of 2009 - Frequently Asked Questions from States, July 7, 2009," attached as Exhibit A to Declaration of Toby Douglas, filed herein on July 26, 2009, at 8; see also id. (response to Question 20: reduction in optional services provided would not disqualify a State from receiving FMAP because no beneficiaries would lose eligibility).

CMS has also explained that "[t]he availability of increased FMAP funding will free-up State funds, which may be spent on activities that may or may not be related to the Medicaid program." Id. at 12 ("Answer" to Question 31); see also id. at 12-13 ("States may use this freed up State money to fund other programs within the State, such as education, or to maintain aspects of their Medicaid program that may have been previously cut due to

5

budgetary constraints.").

E. Procedural Background

The present action was filed by six plaintiffs. Two are seriously disabled California Medi-Cal beneficiaries – Mark Beckwith and Margaret Dowling. The third is an organization that advocates on behalf of the elderly – The Gray Panthers of San Francisco. The remaining three plaintiffs are nonprofit organizations that advocate for and provide health-care services to (among others) Medicaid beneficiaries – California Foundation for Independent Living Centers, Inc., Independent Living Center of Southern California, Inc., and Lifelong Medical Care.

Originally named as defendants were Arnold Schwarzenegger ("Schwarzenegger"), Governor of California; Kim Belshé ("Belshé"), Secretary of California's Health and Human Services Agency; David Maxwell-Jolly ("Maxwell-Jolly"), Director of California's Department of Health Care Services ("DHCS") and the State official responsible for the administration of the MediCal program; John Chiang ("Chiang"), Controller of the State of California; Bill Lockyer ("Lockyer"), Treasurer of the State of California; and Michael E. Genest ("Genest"), Director of the California Department of Finance.

Plaintiffs filed the first amended complaint ("FAC") on June 30, 2009, alleging four causes of action. Plaintiffs subsequently dismissed the third cause of action, and also dismissed defendants Belshé and Genest from the case.

In the first and second causes of action, plaintiffs seek to enjoin implementation of Welfare & Institutions Code §14131.10(b)(1), on the grounds that the mandated cuts conflict with two provisions of ARRA – the "purpose clause" (§ 5000(a)), and the provision in § 5001(f)(3) that a state will be ineligible for increased FMAP if it deposits the enhanced FMAP funds in a reserve or rainy day fund (§ 5001(f)(3)). In the fourth cause of action, plaintiffs seek, in the event that injunctive relief is denied, a judicial declaration that § 14131.10(b)(1) is contrary to and is preempted by ARRA.

Plaintiffs allege that the increased FMAP for the State of California for the 18-month recession adjustment period will amount to an annual savings to the State of $6.6 billion

during the fiscal years 2008-2009 and 2009-2010. They contend that the annual cost to the State to furnish the nine Medicaid services is $124.6 million – a small percentage of the total the State will be receiving in enhanced FMAP funds.

Plaintiffs now seek a preliminary injunction, and Schwarzenegger and Maxwell-Jolly seek an order dismissing the complaint for failure to state a claim and for lack of subject matter jurisdiction.

## DISCUSSION

A.  Motion for Preliminary Injunction

In their motion for preliminary injunction, plaintiffs seek an order enjoining enforcement of the reductions mandated by § 14131.10(b)(1), and requiring defendants to "use and deploy the savings" resulting from the enhanced FMAP reimbursements under ARRA to avert such cuts. In the event that defendants do not restore the nine Medicaid services, plaintiffs seek an order requiring them to refrain from accepting any additional enhanced FMAP funds, and to return all such funds already received.

1.  Legal Standard

Plaintiffs seeking a preliminary injunction in a case in which the public interest is involved must establish that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. California Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009) (citing Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 376 (2008)); see also Munaf v. Geren, 128 S.Ct. 2207, 2218-19 (2008).

2.  Plaintiffs' Motion

Plaintiffs argue that they meet all the requirements for preliminary injunctive relief. First, they assert that they have established a likelihood of success on the merits of the first and second causes of action. With regard to the first cause of action, they contend that the language of § 5000(a) compels the conclusion that a state that accepts enhanced FMAP amounts under ARRA may not allow the savings it achieves to "sink into the State's

7

fungible assets" and, at the same time, eliminate services to its Medicaid beneficiaries; but must, rather, employ the savings resulting from the enhanced FMAP funds to avoid having to cut its own Medicaid services during the period of economic downturn.

With regard to the second cause of action, plaintiffs argue that § 5001(f)(3), when read together with § 5000(a), establishes that defendants have a mandatory ministerial duty not to accept enhanced FMAP funds with one hand, and cut services with the other while contributing funds to a reserve or rainy-day fund. They claim that because the State of California is accepting the FMAP enhancements, which will save the State approximately $3 billion, it cannot then turn around and cancel services worth only $129 million a year on the ground that it can not afford them.

Second, with regard to irreparable injury, plaintiffs cite to declarations detailing the ways in which the elimination of the nine Medicaid services will affect Medicaid beneficiaries, and will lead to increased pain and suffering, as well as the possibility of developing other medical conditions. Plaintiffs also contend that the organizational plaintiffs will suffer irreparable injury on their own account, as they will be impeded in their ability to carry out functions for which they are organized to provide – to enable the blind, elderly, and disabled of our population to obtain adequate medical care and to achieve and continue independence.

Third, plaintiffs argue that the balance of hardships tips strongly in their favor. They argue that the State will suffer no financial loss because it is receiving $3.76 billion extra funds from the enhanced FMAP payments, out of which to pay the relatively small amount of $129.4 million that will be cut as a result of eliminating the nine Medicaid services.

Finally, plaintiffs assert that the public interest strongly favors granting relief, as the requested injunctive relief carries out Congress' express purpose to protect and maintain and not cut Medicaid services, and because our society as a whole suffers when we neglect the poor, the hungry, and the disabled.

In opposition, defendants argue that the motion must be denied because plaintiffs cannot establish the elements necessary for preliminary injunctive relief. Defendants focus

primarily on the question whether plaintiffs have demonstrated a likelihood of success on the merits. Defendants contend that plaintiffs cannot show a likelihood of success on the merits because § 14131.10(b)(1) does not conflict with § 5000(a) or with § 5001(f)(3). In addition, defendants assert, plaintiffs' claims fail as a matter of law because the ARRA provisions at issue are not privately enforceable.

Defendants assert that § 14131.10(b)(1) does not conflict with § 5000(a) because the "purpose clause" is advisory or hortatory, not mandatory, and therefore cannot support a cause of action. In addition, they note that the stated purpose of ARRA Title V is to "help[ ] to avert cuts to provider payment rates and benefits or services," § 5000(a)(2) (emphasis added), and contend that nothing in ARRA precludes the states from cutting benefits or services, which is what the State of California has done here, as distinct from tightening eligibility requirements, which it has not.

Defendants point to comments by Senator Chuck Grassley, who spoke out against H.R. 1 when it was being debated in the Senate. Senator Grassley opposed the bill because while it told states not to restrict Medicaid eligibility, it did not tell them that they could not cut payments and services. See 155 Cong. Rec. S1474, S1513 (Feb. 4, 2009) (statement of Sen. Grassley). Defendants also point to statements by Senator Grassley regarding a proposed amendment that would have prevented states from cutting benefits and provider payment rates as a condition of receiving enhanced FMAP payments, see 155 Cong. Rec. S2009-2010, 2013-2014 (Feb. 9, 2009) (statements of Sen. Grassley), and note that the amendment was not passed by the Senate.

Defendants contend that § 14131.10(b)(1) also does not conflict with § 5000(f)(3), as nothing in the State statute requires or authorizes the deposit of enhanced FMAP into a rainy-day fund, or even mentions the disposition of the enhanced FMAP funds. In addition, defendants argue that the allegations that defendants have "allowed savings resulting to the State from enhanced FMAP . . . to sink into the fungible funds of the State of California" rather than to be used directly for Medicaid, and that they have "s[u]nk" the enhanced FMAP "to be reserved, used as a rainy day fund," FAC ¶ 41, are entirely conclusory and

9

therefore insufficient to state a claim under the standard recently articulated by the U.S. Supreme Court in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

Defendants submit that even were these allegations adequately pled, the claim would fail as a matter of law because nothing in the test of § 5001(f)(3) prohibits the State from applying savings resulting from enhanced FMAP to offset non-Medicaid expenditures. Defendants contend that CMS confirmed as much in its guidance to the States, when it said that States "may use this freed up State money to fund other programs within the State, such as education, or to maintain some aspects of their Medicaid programs that may have been previously cut due to budgetary constraints." Defendants argue that the federal agency's interpretation, which is consistent with the language of ARRA, is entitled to substantial deference.

Defendants make two additional arguments in support of their assertion that plaintiffs cannot show a likelihood of success. First, to the extent that plaintiffs allege that implementation of § 14131.10(b)(1) will violate ARRA – as opposed to asserting that § 14131.10(b)(1) is preempted by ARRA – defendants argue that plaintiffs' claims fail as a matter of law because the ARRA provisions at issue are not privately enforceable, as they do not evince any Congressional intent to create either private enforceable rights or a private remedy. Rather, defendants assert, it appears that Congress intended that the obligation to enforce ARRA, and to impose remedies for noncompliance would lie with CMS, as § 5001(g) provides for reporting by the states to CMS.

Second, defendants argue that the relief sought violates separation of powers. They contend that the request that the court order the State to "cancel and withdraw all requests" to amend the State plan to implement § 14131.10(b)(1), or the alternate request that if HHS approves the proposed amendment, the State be ordered to re-amend its Medicaid plan to restore the services, constitutes an effort by plaintiffs to disrupt and preempt the precise means adopted by Congress for review of the State's compliance with the Medicaid Act.

With regard to the remaining factors in the injunctive relief analysis, defendants argue that plaintiffs have not met their burden of demonstrating irreparable injury, as the

10

individual declarants offer no competent evidence with regard to acupuncture, audiology, speech therapy, chiropractic, and psychological services, and the organizational declarants simply offer speculation unsupported by facts.  Defendants also assert that plaintiffs have not carried their burden with regard to adult dental services, optometric and optician services, and incontinence creams and washes, as the evidence provided is speculative and anecdotal.

Defendants contend that the factors of balance of hardships and the public interest favor defendants, noting that the State of California is facing an unprecedented budget crisis, and asserting that the State reduced Medicaid coverage of certain optional services as a last resort (while retaining many optional coverages including coverage of prescription drugs).

The court finds that the motion must be DENIED, as plaintiffs have not met their burden of showing a likelihood of success on the merits.  Specifically, they have not established that § 14131.10(b)(1) is preempted by either § 5000(a) or § 5001(f)(3).

Federal preemption is premised upon the Supremacy Clause of the United States Constitution.  The Supremacy Clause invalidates all state laws that "interfere with, or are contrary to," federal law.  Hillsborough County v. Automated Med. Labs., 471 U.S. 707, 712 (1985) (quoting Gibbons v. Ogden, 9 Wheat. 1, 22 U.S. 1, 82 (1824)).  A plaintiff may bring suit under the Supremacy Clause to enjoin implementation of a state law allegedly preempted by federal statute, regardless of whether the federal statute at issue confers an express "right" or cause of action on the plaintiff.  Independent Living Ctr. of So. Calif. v. Shewry, 543 F.3d 1047, 1048-49 (9th Cir. 2009).

Federal preemption analysis always starts with a question of congressional intent, and then proceeds to a discussion of the state law's interaction with the federal law or regulation.  See Wyeth v. Levine, 129 S.Ct. 1187, 1195 (2009); English v. General Elec. Co., 496 U.S. 72, 78-79 (1990); see also Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) ("'[t]he purpose of Congress is the ultimate touchstone' in every preemption case") (quotation and citation omitted).

11

State action may be preempted by federal law in three ways – where Congress expressly preempts state law; where Congress indicates by implication that federal law shall exclusively occupy a field of regulation; and where state law conflicts with federal law. Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541 (2001).

Here, ARRA Title V contains no express statement of intent to preempt state law. In addition, the court is unaware of any federal regulations that contain any such statement of express preemption. Nor has Congress indicated by implication that federal law shall exclusively occupy the field of regulation, as Medicaid is a cooperative federal-state program, in which federal law imposes certain requirements, but in which the states also play a role in deciding how the program will operate.

A conflict between state and federal law "arises when compliance with both federal and state regulations is a physical impossibility or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hillsborough, 471 U.S. at 713; see also Independent Living Ctr of So. Calif. v. Maxwell-Jolly, 572 F.3d 644, 653 (9th Cir. 2009).

Plaintiffs allege in the FAC that the acceptance by the State of California of enhanced FMAP funds (under ARRA)

> was and is and subject to an express and implied requirement imposed by Congress, in the purposes clause of § 5000 of the Enhanced FMAP Measure: namely, that the State shall protect and maintain the State's Medicaid program including averting cutting any services, (at least, so long as the State enjoys savings from receipt of the enhanced FMAP funds which exceed the cost of the Medicaid services it proposes to cut).

FAC ¶ 30. Although it is not entirely clear from the papers, plaintiffs' position, based on statements of counsel at the hearing, appears to be that § 14131.10(b)(1) conflicts with ARRA because compliance with both federal and state law is impossible, and because state law prevents the full accomplishment of Congressional purposes.

The U.S. Supreme Court recently commented that "physical impossibility" may not be the most appropriate standard for determining whether the text of state and federal laws directly conflict. See Wyeth, 129 S.Ct. at 1208-09. In any event, the court finds nothing in

12

the text of the laws at issue here that suggests that it is impossible to comply with both state and federal law, as § 14131.10 does not mention the use of the enhanced FMAP funds, and nothing in Title V prohibits states receiving the enhanced FMAP funds from cutting optional Medicaid services.

Thus, the court must consider whether state law stands as an obstacle to the full purpose and objectives of Congress. With regard to § 5000(a), plaintiffs contend that Congress provided the enhanced FMAP to the states so that they would not cut Medicaid services, and that California's enactment of a law requiring the elimination of certain "optional" Medicaid services stands as an obstacle to the accomplishment and execution of that Congressional purpose.

With regard to § 5001(f)(3), plaintiffs appear to be arguing that because the cost of the eliminated optional Medicaid services is less than the total amount the State of California is to receive under the enhanced FMAP, the fact that the State is not using the enhanced FMAP funds to pay for the optional services means that it is "indirectly" depositing some of the FMAP funds into a reserve fund – which also stands as an obstacle to the accomplishment and execution of Congressional purpose.

ARRA Title V is entitled "State Fiscal Relief," and, as described above, has a two-fold purpose. Section 5000(a), subpart (2), is the clause at issue here. It sets forth a general purpose, which is "to protect and maintain" state Medicaid programs during a period of economic downturn. It then provides two ways in Title V is intended to protect and maintain those Medicaid programs. The first way is "by helping to avert cuts to provider payment rates and benefits or services." The second way is "by helping . . . to prevent constrictions of income eligibility requirements for such programs, but not to promote increases in such requirements."

The court agrees with defendants that subpart (2) is advisory or precatory, not mandatory. See Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 24 (1981) (no private cause of action because statute spoke in terms intended to be hortatory not mandatory); Orkin v. Taylor, 487 F.3d 734, 739 (9th Cir. 2007) (under Cort v. Ash analysis,

reference to "the sense of Congress" was merely a precatory provision, not amounting to positive, enforceable law); see also Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 511 (1990) (elaborating on Pennhurst).

Plaintiffs contend that the first example – "by helping to avert cuts to . . . benefits or services" – should be read as a statement of intent that states receiving the enhanced FMAP payments are not permitted to cut any benefits or services that their Medicaid beneficiaries had previously been receiving, even if those benefits or services are optional under the Medicaid Act.

However, § 5000(a) it does not impose any "obligation" on the states, and also does not mandate that the states categorically "avert cuts" to Medicaid programs. Section 5000(a) states that the enhanced FMAP payments are intended to "help avert" cuts to benefits or services, not that the enhanced payments are meant to "prevent" such cuts. If Congress had wanted to say that states receiving the enhanced FMAP payments were required not to cut any benefits or services – in other words, that any state that cut benefits or services would be ineligible for the enhanced FMAP payments – it could easily have done so.

The second way in which the enhanced FMAP payments are intended to "protect and maintain" Medicaid programs is by "helping . . . to prevent constrictions of income eligibility requirements" for Medicaid. In § 5001(f)(1), Congress specifically provided that a state would not be eligible for the enhanced FMAP payments "if eligibility standards, methodologies, or procedures under its State plan . . . are more restrictive" than under the plan that was in effect on July 1, 2008.

That is, under § 5001(f)(1), if a state makes it more difficult to qualify to be a Medicaid beneficiary than it was as of July 1, 2008, that state will not be eligible for the enhanced FMAP payments. However, there is no corresponding provision in § 5001 that applies to the cutting of benefits or services. The fact that Congress did include the limitation in § 5001(f)(1) indicates that it could also easily have included a prohibition against cutting benefits or services if it wanted to, but chose not to.

14

In sum, the court finds that cuts in optional services mandated by Welfare and Institutions Code § 14131.10(b)(1) do not stand as an obstacle to the accomplishment and execution of the congressional purpose stated in ARRA § 5000(a) subpart (2). Accordingly, plaintiffs have not established a likelihood of success as to the first cause of action.

Similarly, with regard to the second cause of action, the court finds that § 14131.10(b)(1) does not stand as an obstacle to the accomplishment and execution of Congressional purpose. As discussed above, nothing in § 14131.10(b)(1) requires or authorizes the deposit of enhanced FMAP funds into a reserve or rainy day fund, or in any way addresses the disposition of the funds. Accordingly, plaintiffs have not established a likelihood of success as to the second cause of action.

Finally, plaintiffs cannot establish a likelihood of success on the fourth cause of action if they do so as to the first and second causes of action, as the fourth cause of action is entirely derivative of the first two causes of action.

Because the court finds that plaintiffs have not established a likelihood of success on the merits, the court finds it unnecessary to address the remaining factors governing motions for preliminary injunction.

B.   Motion to Dismiss

Maxwell-Jolly and Schwarzenegger seek an order dismissing the complaint for failure to state a claim and for lack of subject matter jurisdiction, arguing that § 14131.10 does not conflict with ARRA, and also asserting that there is no private right of action to enforce §§ 5000 and 5001 of ARRA.

1.   Legal Standards

a.   Motions to Dismiss for Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

requirements of Federal Rule of Civil Procedure 8. Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950.

        b.        Motions to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). Thus, federal courts have no power to consider claims for which they lack subject-matter jurisdiction. See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992).

The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Billingsly v. C.I.R., 868 F.2d 1081, 1085 (9th Cir. 1989). The burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction. Kokkonen, 511 U.S. at 377; Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).

    2.    Defendants' Motion

Defendants argue that the first two causes of action fail as a matter of law, for the reasons argued in opposition to plaintiffs' motion for preliminary injunction, and assert that the fourth cause of action fails because it is derivative of the first two causes of action.

With regard to the first cause of action, defendants assert that § 14131.10 does not conflict with § 5000(a), because Title V's "purpose clause" is advisory or hortatory rather than mandatory, and because nothing in ARRA precludes states from cutting "benefits or services," which is what the State of California has done here, as distinct from constricting

16

eligibility requirements, which it has not.

With regard to the second cause of action, defendants argue that § 14131.10 does not conflict with § 5001(f)(3) because nothing in § 14131.10 requires or authorizes deposit of enhanced FMAP into a rainy day fund, or addresses in any matter the disposition of the funds.

Plaintiffs make the same arguments in opposition to the motion to dismiss as they made in support of their motion for preliminary injunction. First, they contend that the enhanced FMAP estimated to be received by the State will amount to approximately $3.76 billion per year – a sum that the State would otherwise have had to expend for services in the Medi-Cal program in California – and that the amount the State will save by cutting the nine optional Medicaid services will be approximately $129.4 million.

Plaintiffs argue that the refusal of the State to use any of the $3.76 billion it is saving to cover the cost of the $129.4 million it is cutting violates the express "purpose clause" of § 5000(a), which, plaintiffs assert, "expressly imposes upon the State and its officers the obligation to protect and maintain the State's Medicaid program by averting cuts to services of the program;" and also violates the provision in § 5001(f)(3) that prohibits States from directly or indirectly depositing the enhanced FMAP funds into a rainy-day fund. Plaintiffs then argue that they are entitled to injunctive relief, for the same reasons as argued in their motion for preliminary injunction.

The court finds that the motion must be GRANTED. To the extent that the FAC alleges that § 14131.10(b)(1) is preempted by ARRA because it conflicts with federal law, the motion to dismiss is granted without leave to amend. For the reasons stated above in the discussion of plaintiffs' motion for preliminary injunction, the court finds no express or implied preemption, and no conflict between § 5000(a) and § 14131.10(b)(1), or between § 5001(f)(1) and §14131.10(b)(1).

The basis of plaintiffs' suit is not entirely clear, however. While they allege in the FAC that this is a case brought under the Supremacy Clause – that is, that both the first and second causes of action are claims "[f]or injunction against each defendant, to enjoin

State action preempted under the Supremacy Clause" – they also allege, for example, that § 14131.10 and "the policies and actions" of the defendants

> constitute State action which is in violation of, hence preempted, under the Supremacy Clause, by subd. (f)(3) of § 5001 and the purposes for which the aforesaid subd. (f)(3) of § 5001was enacted to accomplish, (namely to protect and maintain the State's Medicaid program by averting cuts to Medicaid services, as specified by § 5000(a).

FAC ¶ 40.

In other words, they appear to be alleging both that § 14131.10.(b)(1) is preempted by ARRA, and that in implementing the cuts mandated by § 14131.10(b)(1), defendants have violated, or will violate, ARRA. In addition, plaintiffs argue in their opposition to the motion to dismiss (as in their motion for preliminary injunction) that the cutting of the nine Medicaid services "violates" ARRA – not just that § 14131.10(b)(1) is preempted by ARRA.

Accordingly, to the extent that plaintiffs intend to allege that in implementing § 14131.10, defendants have violated (or will violate) ARRA, the court also finds that the motion should be granted, without leave to amend as to the first cause of action, but with leave to amend as to the second cause of action.

As to the first cause of action, amendment would be futile, because § 5000(a) is advisory or hortatory rather than mandatory, and therefore cannot support a cause of action. See Pennhurst, 451 U.S. at 24. It is true, as plaintiffs assert, that under Shewry, a private party may seek declaratory and injunctive relief against the enforcement of a state statutory scheme on the ground of federal preemption, even in the absence of an explicit statutory provision establishing a cause of action, and regardless of whether the federal statute at issue confers a "federal right" on the plaintiff. Id., 543 F.3d at 1058. Here, however, plaintiffs have conflated the right to seek injunctive relief against the enforcement of a state statute on the ground of federal preemption, with the right to bring a claim alleging violation of a federal statute by state officials.

That is, while plaintiffs are permitted, under the rule stated in Shewry, to seek an order enjoining the implementation of a state statute on the grounds that it is preempted by federal law, the same analysis does not apply to a claim that a state official has violated

18

federal law by implementing the provisions of a state statute.

Under that second option, the issue is whether Congress intended that there be a private right of action under the particular federal law at issue. Thus, the court must determine whether Congress intended to create a federal right with its enactment. See Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002). This is because, like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. See Alexander v. Sandoval, 532 U.S. 275, 286 (2001).

Here, because plaintiffs have confused the two issues (claim of federal preemption vs. claim of violation of federal law), and the question is not adequately briefed, and the court therefore does not decide whether or not Congress intended a private right of action, but assumes – for purposes of this motion only – that it did so. In such a case, the ultimate question with regard to the second cause of action – the claim that § 14131.10 violates the provision in § 5001(f)(3) that the State is not eligible for enhanced FMAP payments if any amounts attributable to increased FMAP are deposited into a rainy-day fund – is whether the State is actually depositing any of the funds received under the FMAP enhancement provision into a reserve or rainy-day fund.

Plaintiffs do not allege in the FAC any facts showing that such a fund exists or that the State is depositing some of the money it is receiving under the FMAP enhancement provision into said rainy-day fund. What plaintiffs do allege is that defendants "have allowed savings resulting to the State from use of enhanced FMAP funds in the Medicaid program[ ] to sink into the fungible funds of the State of California, to be reserved, used as a rainy day fund, and spent for other purposes; – without using these savings to protect and maintain the State's Medicaid program including averting cuts in Medicaid services." FAC ¶ 41.

Defendants claim that there is no rainy-day fund. They submit a declaration by Michael Genest (the Finance Director), stating that the State of California does not currently have a reserve or rainy-day fund with money in it; and also stating that the funds being provided under ARRA are being used for Medicaid purposes. For their part, plaintiffs do

not provide any evidence that the State is in fact depositing the funds into a rainy-day fund. Nevertheless, in a Rule 12(b)(6) motion, defendants' evidence may not be considered by the court.

The court agrees with defendants that under Iqbal, the second cause of action does not allege sufficient facts to state a claim. Accordingly, the motion is granted with leave to amend the second cause of action, to allege facts showing that the State has in fact violated ARRA by depositing the enhanced FMAP funds into a rainy-day fund. Any amended complaint must be filed no later than October 1, 2009.

Should plaintiffs choose to file an amended complaint, defendants may file a motion to dismiss for failure to state a claim, and may also file a motion to dismiss on the ground that there is no private right of action to assert a claim under ARRA.

## CONCLUSION

In accordance with the foregoing, the court DENIES the motion for preliminary injunction, and GRANTS the motion to dismiss, with leave to amend the second cause of action only.

**IT IS SO ORDERED.**

Dated: September 1, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge